Anna Lou BELANGER, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 92–3302.

United States Court of Appeals, Federal Circuit.

Aug. 4, 1993.

Steven B. Frank, Frank & Rosen, Seattle, WA, argued for petitioner.

John Warshawsky, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Donna C. Maizel, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, were on the brief for respondent. Of counsel was Sharon Y. Eubanks. Also on the brief were James S. Green, Acting Gen. Counsel and Gail Goldberg, Deputy Asst. Gen. Counsel, Office of Personnel Management, of counsel.

Before PLAGER and RADER, Circuit Judges, and PLUNKETT, District Judge.*

* The Honorable Paul E. Plunkett, United States District Court for the Northern District of Illinois, sitting by designation.

PLAGER, Circuit Judge.

Petitioner Anna Lou Belanger (Petitioner) appeals the denial of her claim for a former spouse annuity by Respondent Office of Personnel Management (OPM). On September 20, 1991, the denial was upheld by an administrative judge (AJ) of the Merit Systems Protection Board (MSPB or Board), No. SE0831910415I–1. That decision became the final decision of the MSPB on January 22, 1992, 52 M.S.P.R. 124. 5 C.F.R. § 1201.-113(b) (1992). We affirm.

## BACKGROUND

### A.

This case presents the court with the unfortunate result of less than crystal-clear OPM directives regarding employee benefits. Specifically, this case involves 1) an employee's protracted efforts to secure a survivor annuity for his former spouse, 2) confusing and conflicting advice from the government as to the legal effect of the employee's divorce decree, and finally, 3) confusion wrought by OPM's loose use of the term "annuity" to refer to both retirement annuities and survivor annuities. When the employee finally understood what it was that OPM was trying to communicate, the deadline for making the desired survivor annuity election had passed.

█ The employee's former spouse argues that this court should give effect to the wishes of the now-deceased employee, rather than to the letter of the OPM regulation. The deference we are required by statute to give to the factual findings of the AJ prevents us from doing so. Nor can we adopt the former spouse's proffered reading of the relevant statute and regulations. Courts must enforce statutory requirements as Congress has written them. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (the Appropriations Clause of the constitution requires that any payment from the Treasury be in accordance with the authorizing statute; equitable estoppel may not be applied to negate a statutory prerequisite for disbursement).

### B.

At the outset, it is helpful to do what OPM did not do—to clearly state the difference between a 'retirement annuity' and a 'survivor annuity.' When an eligible and qualified government employee retires, the employee receives certain monthly payments, known as the 'retirement annuity.' A portion of the retirement annuity may be set aside for receipt by a former spouse during the retired employee's remaining years of life. (Of course a current spouse presumably shares in the benefits from the current income provided the employee by the retirement annuity.) After the employee dies, the 'survivor annuity' comes into play. It is that portion of the employee's retirement benefits which may be reserved for monthly disbursement, *after* the employee's death, to the spouse or former spouse. The establishment of a former spouse's annuity or a survivor's annuity reduces the amount of the employee's retirement annuity, and thus requires either the employee's affirmative election or, in some circumstances, a court order. Having made the semantics clear, we proceed to explain the confusion wrought by loose use of these two similar terms.

Petitioner was the first spouse of Robert Belanger. Their divorce was finalized on March 6, 1985. The divorce decree awarded Petitioner half of Robert's "retirement benefits,"[1] *Jt.App.* at 33, but a survivor annuity for a former spouse was not amongst the benefits available at that time. However, legislation granting former spouses the right to receive survivor annuities had been enacted by Congress but was not yet effective. Civil Service Retirement Spouse Equity Act, Pub.L. No. 98–615, 98 Stat. 3195 *et seq.* (1984) (Spouse Equity Act or Act). On March 28, 1985, Robert married his current spouse, Maureen.

Under the terms of the Spouse Equity Act, enacted on November 8, 1984, a divorce decree finalized after the effective date of the Act—May 7, 1985—could award a former

---

1. It is clear from the record that that provision contemplated both retirement and survivor annu-

ities, as they became available in the future. *See Jt.App.* at 36.

spouse survivor annuity rights which OPM would recognize, with no further election required of the employee. *See id.* § 2(4)(G), *codified as* 5 U.S.C. § 8341(h)(1) (1988); 5 C.F.R._§ 831.1704(d)(1) (1985). For decrees entered prior to that date, the government employee was and continued to be required to file a specific, written election in order to grant the former spouse rights to a survivor annuity. *See* 5 C.F.R. § 831.605 (1988). Accordingly, the divorce decree instructed Robert to "cooperate to the fullest extent and to execute and file such instruments as are necessary to make any future annuity or benefits available to this petitioner." *Jt.App.* at 36.[2] Although Robert's and Petitioner's divorce decree clearly became final *before* that date, OPM initially indicated that the divorce decree would be effective in granting Petitioner's interests under the decree.[3] OPM did not ·distinguish between Robert's *retirement* annuity, for which the decree had legal effect, and the *survivor* annuity, for which it did not.

The confusion deepened in July of 1989 when Maureen, apparently acting on behalf of Robert pursuant to power of attorney and presumably in recognition of Petitioner's interest, filed his retirement application. She filled out OPM Form 1538 to designate herself rather than Petitioner as the survivor annuitant, even though the form clearly indicated that court orders entered before May 7, 1985, were without legal effect. *Jt.App.* at 51. Maureen states that she was acting on instruction of a Civilian Personnel Office (CPO) Representative, who told her to "put [her] name and not Anna Lou's [Petitioner's] on the Survivor Election form because Anna Lou would automatically get the survivor benefit (until she died at least) because of the divorce decree and therefore, placing my name on the form would only insure benefits to me later in the event she did die before me." *Jt.App.* at 88–89.

Robert's application for disability retirement was approved on December 13, 1989, and he received his first retirement annuity payment on June 1, 1990. At that point, OPM regulations provided for thirty days in which to change the designated recipient of the employee's survivor annuity. 5 C.F.R. § 831.609 (1990). After that, the employee's elections became final. 5 C.F.R. 831.611(a) (1990).

In the interim, Petitioner's attorney contacted OPM to insure that Petitioner would receive Robert's survivor annuity. In response to this inquiry, OPM sent Robert a letter dated April 3, 1990, informing him that he needed to file "an Election of Former Spouse Annuity or Combination Current/Former Spouse Annuity, a Spouse's Consent to Survivor Election (OPM Form 1431), and a Designation of Beneficiary, (OPM Form 2823)" in order to give effect to the terms of the divorce decree. *Jt.App.* at 56. The letter also clearly states that at that time Maureen was the designated survivor annuitant, and that Robert's designation of Petitioner as Civil Service Retirement System beneficiary "does not affect your ... *survivor annuity* designation[ ]." *Id.* (emphasis added). The letter then concludes: "The apportionment of your *annuity* will take effect, as required by the Decree of Dissolution, without any further action from you. We will process the forms requesting the *other actions* as soon as you complete them and return them to us." *Id.* (emphasis added). OPM also sent Robert a summary of his benefits, in which Maureen was listed as his designated survivor annuitant. *Jt. App.* at 58. Subsequently OPM confirmed in writing to both Robert and Petitioner's attorney that the *annuity* would be apportioned in compliance with the Decree of Dissolution. *Jt.App.* at 63, 65 (emphasis added).

The sum total of these communications was to leave Robert with the erroneous impression that the Decree of Dissolution would

---

2. At the time of the divorce, Robert was in active government service; he did not retire until 1989.

3. Petitioner's attorney sent OPM a copy of the Decree of Dissolution on May 7, 1985. *Jt.App.* at 40. OPM responded on June 10, 1985, requesting a certified copy of the decree, and stating "[u]pon receipt of the certified Decree, *we will*

*flag our files to reflect your client's interest."* *Jt.App.* at 41 (emphasis added). On July 1, 1985, after receipt of that document, OPM responded again; "we have flagged our files to reflect the legal instrument in order to *preserve* your client's interest." *Jt.App.* at 47 (emphasis added).

guarantee Petitioner *both* the retirement annuity and the survivor annuity. *Jt.App.* at 74, 76. Thus, Robert did not change his election from Maureen to Petitioner prior to July 1, 1990, the last possible date under the regulations for making such a change.

OPM contacted Petitioner's attorney on October 30, 1990, to inform her that Petitioner would not be receiving the survivor annuity, because "[t]he court order is not qualifying for that purpose." The letter referred Petitioner's attorney to 5 C.F.R. § 831.-1704(d)(1) (1990), which as stated above sets forth the May 7, 1985 cut-off for self-executing divorce decrees. *Jt.App.* at 77. Although on November 14, 1990, Robert belatedly sought to change his election to designate Petitioner as his survivor annuitant, *Jt. App.* at 78, OPM refused to honor the election. *Jt.App.* at 87. Robert died on November 18, 1990. Petitioner's application for a survivor annuity was twice rejected by OPM, and this appeal ensued.

## DISCUSSION

On appeal, Petitioner contends that the MSPB's affirmance of OPM's decision awarding the survivor annuity to Maureen in accordance with Robert's July 1989 election should be reversed on three grounds. First, Petitioner argues that no substantial evidence supports the MSPB's conclusion that Robert knew or should have known that the Decree of Dissolution would not provide Petitioner with the survivor annuity. Second, petitioner argues that OPM's provision of misinformation regarding the effect of the Decree of Dissolution should as a matter of law estop OPM from denying benefits. Third, petitioner argues that Robert's belated election of Petitioner as his survivor annuitant should be given effect—that the thirty day deadline set forth in 5 C.F.R. § 831.609 ought to be waived.

Although the image of Robert Belanger going to his deathbed struggling to get his OPM paperwork in order is rather Orwellian, none of Petitioner's arguments provide a basis for judicial redress.

A.

Petitioner challenges the AJ's conclusion that Robert knew or should have known that the Decree of Dissolution would not secure the survivor annuity for Petitioner. However, the factfinding of the MSPB is accorded deference by this court. A petitioner who challenges the factual underpinnings of the MSPB's decision must show that the decision is unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Substantial evidence is "such relevant evidence as a reasonable individual might accept as adequate to support a conclusion." *Brewer v. United States Postal Serv.*, 647 F.2d 1093, 1096, 227 Ct.Cl. 276 (1981), *cert. denied* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982) (quoting *Consolidated Edison Co. v. National Labor Relations Review Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). We do not review the facts *de novo*, but only determine "whether the administrative determination is supported by substantial evidence on the record as a whole." *Id.*

Here, the AJ fully considered the communications described above, and concluded that even prior to the April 1990 letter from OPM, "a reasonable person would know that the divorce decree did not provide appellant with a survivor annuity." *Jt.App.* at 13. Further, the AJ noted that nothing explained "why Mr. Belanger did not execute the forms provided by OPM with its April 3, 1990, letter and change his survivor election to appellant." *Id.* at 13–14. Robert's belief that the divorce decree would secure for Petitioner the survivor annuity as well as the retirement annuity was "unjustified in view of the information he received to the contrary." *Id.* at 15.

Although Petitioner correctly notes that OPM's communications were not models of clarity and consistency, Petitioner has not refuted the substantial evidence discussed above which supports the AJ's conclusion that the April 3, 1990 letter adequately informed Robert of both the need to change his election and of the proper procedure for so doing. In particular, we note the clear statement on the OPM Form 1538 (Application for Retirement), which Maureen filled out on behalf of Robert in 1989: "However, a for-

mer spouse cannot receive a survivor annuity by court order unless he or she ... was divorced from you after May 6, 1985...." *Jt.App.* at 51.[4] While Robert obviously remained confused as to the difference between retirement annuities and survivor annuities, the record contains substantial evidence supporting the AJ's conclusion that Robert Belanger's confusion was not objectively defensible.

### B.

■ Contrary to the AJ's view of the matter, Petitioner argues that OPM "affirmatively misled" Robert, because it did not "adequately notify Robert Belanger that he could not rely on the divorce decree...." *Pet.Br.* at 31. Petitioner argues that OPM's 1985 communications allegedly planted the misconception that the Decree of Dissolution would have legal effect for the survivor annuity, that the erroneous advice given in 1989 by the CPO Representative reinforced that impression, and that all subsequent communications by OPM were insufficient to dispel the confusion.

Assuming for the sake of argument that *Office of Personnel Management v. Richmond,* 496 U.S. at 423, 110 S.Ct. at 2470–71, leaves open a "crack in the door" through which an estoppel argument might pass, *Brush v. Office of Personnel Management,* 982 F.2d 1554, 1558 n. 11 (Fed.Cir.1992), petitioner has failed to make the threshold showing of reasonable reliance as required by *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). *See also Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981). OPM's April 1990 correspondence *at the very least*

provided Robert with ample reason to seek verification of his understanding of the effect of the Decree of Dissolution. Thus Petitioner's estoppel argument is not viable.[5]

### C.

Finally, Petitioner argues that the thirty day deadline for changing elections found in 5 C.F.R. § 831.609 should be waived in Robert Belanger's case, because OPM did not tell him that he had only thirty days in which to change his mind. Petitioner cites a line of cases which apply such waiver principles.[6] Subsequent to oral argument, this court clarified that waiver can be applied by the courts, *Office of Personnel Management v. Richmond* notwithstanding. *Brush,* 982 F.2d at 1561–64. We now need to determine if waiver is appropriate in this case.

The gravamen of Petitioner's waiver argument is that OPM violated a clear statutory duty to notify Robert of his "rights of election," and therefore the deadline for filing the change in election should be waived and Robert's belated election of November 14, 1990 should be given effect. Petitioner finds OPM's duty to notify in the following:

> "The Director of the Office of Personnel Management shall, on an annual basis, inform each *annuitant* of such annuitant's *rights of election* under sections 8339(j) and 8339(k)(2) of title 5, United States Code."

5 U.S.C. § 8339 (note), Pub.L. 95–317, 92 Stat. 382, § 3 (1978) (emphasis added). This notification requirement was also at issue in *Brush.*

In *Brush,* the government employee was married when he retired. He elected to receive a reduced annuity in order to provide

---

4. Maureen could not have been confused as to whether Petitioner's divorce from Robert preceded May 7, 1985, because Maureen's subsequent marriage to Robert occurred on March 28, 1985.

5. Petitioner also claims that OPM's alleged failure to rectify any misunderstanding arising from the 1985 and 1898 communications violates OPM's "obligation to notify" arising from FPM Supp. 831-1, S1-4(d), ¶ 6, and further that OPM's unclear communication violates "general notions of due process." While we agree with Petitioner that there is room for improvement in

OPM's communication, the AJ's factual findings discussed *supra* rebut these arguments.

6. *Harris v. Office of Personnel Management,* 888 F.2d 121, 124 (Fed.Cir.1989); *Darsigny v. Office of Personnel Management,* 787 F.2d 1555, 1559 (Fed.Cir.1986); *Speker v. Office of Personnel Management,* 45 M.S.P.R. 380 (1990); *Davies v. Office of Personnel Management,* 5 M.S.P.R. 199, 203 (1981). *See also Kolbe v. Office of Personnel Management,* 32 M.S.P.R. 626 (1987); *Leyson v. Office of Personnel Management,* 31 M.S.P.R. 111, 114 (1986).

Mrs. Brush with a survivor annuity. Roughly three years later, the Brushes divorced. Mr. Brush continued to collect a reduced annuity until his death almost two years later.[7] Mrs. Brush's application for a survivor annuity was denied, because Mr. Brush had not formally elected to provide a survivor annuity for her in her new capacity as *former* spouse. 982 F.2d at 1556.

In *Brush,* the court held that OPM constructively waived the requirement for formal election, because OPM had violated the notification requirement of 5 U.S.C. § 8339 by failing to annually inform Mr. Brush of his right to elect a former spouse annuity under 5 U.S.C. § 8339(j)(3). *See also* 5 C.F.R. §§ 831.512(a)(2) and 831.621(a)–(b) (1989). The court rejected OPM's contention that it was required to provide notification only in the event of post-retirement marriages. Instead, it held that "the plain meaning of this provision is that annual notice is mandatory." It further noted that "[w]hile post-retirement marriage is one scenario under sections 8339(j) and (k)(2), it is by no means the complete menu of possibilities anticipated by sections 8339(j) and (k)(2)." *Brush,* 982 F.2d at 1559. Since OPM violated its notification duty, the court required OPM to waive the requirement that a formal election in favor of Mrs. Brush as a *former* spouse be filed within two years, and to give continued effect to Mr. Brush's initial election of an annuity for Mrs. Brush in her past capacity as current spouse.

■ Robert Belanger's case differs significantly from the facts in *Brush.* First, *Brush* holds in accordance with the statute that OPM is obligated to provide annual notice to "annuitants." 982 F.2d at 1559. Robert Belanger did not become an "annuitant" until December 13, 1989, when his application for retirement was granted. 5 U.S.C. § 8331(9) (1988) ("annuitant" means a former employee....) *See also* 5 C.F.R. § 831.112(b)(2) (1989) (annuitant is a "person who has been separated from service....."). From that point onward, OPM was obligated to give him annual notice of his "rights of election."

*Brush,* 982 F.2d at 1559. Since Robert Belanger died within a year of his retirement, OPM could not have violated this notice provision.

■ Petitioner's argument also fails because the right to *change* an election within thirty days of receiving the initial payment is not a "right of election" within the notification requirement of 5 U.S.C. § 8339. The notification requirement at issue here is limited to those "rights of election" found in 5 U.S.C. §§ 8339(j) and (k)(2)—namely, the right to elect for a former spouse a survivor annuity in the event of post-retirement divorce, and to elect for a new spouse a survivor annuity in the event of a post-retirement marriage or remarriage. Such "rights of election" are changes which may arise after a government employee retires—i.e., after he or she becomes an "annuitant." Periodic reminders of the available options is of obvious importance when those elections must be made within a certain time period, and the occasion for those elections may arise years after retirement. *See, e.g.,* S.Rep. No. 904, 95th Cong. 2nd Sess. (1978), 1978 U.S.C.C.A.N. 1024, 1035 (letter of Jule Sugarman, Chairman of the Civil Service Comm'n, supporting passage of the notification provision).

The right to make *changes* amongst the options *initially elected* at retirement is quite different. Congress provided by statute that a former spouse annuity "shall be made at the time of retirement...." 5 U.S.C. § 8339(j)(3). Pursuant to OPM's statutory authority to "prescribe such regulations as are necessary and proper to carry out this subchapter," 5 U.S.C. § 8347(a) (1988), OPM provided a limited grace period in which to correct a mistake: "An employee ... may name a new survivor or change his election of type of annuity if, not later than 30 days after the date of the first regular payment, the ... employee ... files with OPM a new written election." 5 C.F.R. § 831.609.

The right to *change* an initial election is thus limited by statute and regulation. Giv-

---

7. By regulation, Mr. Brush had two years from time of his post-retirement divorce to make a new election. 5 C.F.R. § 831.612(a)(2) (1989).

In short, Mr. Brush expired before the election period did.

en the size of the retirement program which OPM administers, common sense dictates that an employee's elections at retirement become irrevocable, absent some future change in circumstances as envisioned by 5 U.S.C. § 8339 and its notification provision.

 Finally, we note that Robert Belanger in fact had been given notice of the permanency of his elections. The instructions accompanying the retirement application form, which Maureen with his power of attorney filled out and signed in 1989, state: "[C]onsider your election carefully. *No change will be permitted after your annuity is granted except as explained in the instructions.*" *Jt. App.* at 48 (emphasis added). Absent a specific Congressional directive, OPM need do no more. *See Davis v. Office of Personnel Management*, 918 F.2d 944, 946 (Fed.Cir. 1990) (citing *Nordstrom v. United States*, 342 F.2d 55, 59, 169 Ct.Cl. 632 (1965)).

## CONCLUSION

Petitioner has not demonstrated that the MSPB's decision was unsupported by substantial evidence, was based on an error of law, or was otherwise procedurally defective. 5 U.S.C. § 7703(c). Accordingly, we must affirm.

## COSTS

Parties to bear their own costs.

AFFIRMED.