NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WENDY ALGUARD,**
*Petitioner*

**v.**

**DEPARTMENT OF AGRICULTURE,**
*Respondent*

---

2021-2154

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-20-0270-W-1.

---

Decided:  August 3, 2022

---

WENDY ALGUARD, Yakima, WA, pro se.

ERIC JOHN SINGLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before PROST, CHEN, and STOLL, *Circuit Judges*.

PER CURIAM.

Wendy Alguard petitions for review of the Merit Systems Protection Board's ("Board") decision denying corrective action in her individual-right-of-action ("IRA") appeal. We affirm.

I

Ms. Alguard was a Program Support Assistant with the U.S. Department of Agriculture's ("agency") Animal and Plant Health Inspection Service, Plant Protection Quarantine, in Yakima, Washington, at the times relevant to this appeal. Ms. Alguard's duties included providing administrative support to other employees.

In February 2020, Ms. Alguard filed an IRA appeal with the Board alleging that the agency took six personnel actions against her in retaliation for three protected whistleblowing disclosures. The three alleged protected disclosures were: (1) a June 26, 2015 complaint to the agency's Office of Inspector General ("OIG") regarding files taken from Ms. Alguard's filing cabinet; (2) a September 21, 2015 complaint to OIG regarding falsified overtime; and (3) an August 10, 2017 complaint to OIG regarding the renewal of a lease for an unoccupied office space in Yakima. SApp'x[1] 8. The six alleged personnel actions were: (1) a July 15, 2015 letter of caution issued by Diana Hoffman, who at the time was the State Plant Health Director responsible for the Yakima office; (2) a change in Ms. Alguard's performance rating from "Superior" to "Fully Successful"; (3) a denial of a $500 spot award; (4) Ms. Alguard's nonselection for a position as an Export

_____

[1]    "SApp'x" refers to the agency's Supplemental Appendix for pages 1–1988 and to Ms. Alguard's Supplemental Appendix for pages 1989–2285.

Certification Specialist[2]; (5) a five-day suspension for exhibiting unacceptable behavior and failing to follow instructions; and (6) a reprimand for conduct prejudicial to the best interests of the service.

An administrative judge ("AJ") held a hearing, heard testimony, and issued an initial decision denying corrective action. After finding that Ms. Alguard made the three aforementioned disclosures (and that they were protected), the AJ considered whether she proved that any of them contributed to a personnel action—and if so, whether the agency proved by clear and convincing evidence that it would have taken the same personnel action absent such disclosure(s).

For some of the alleged personnel actions, the AJ found either that Ms. Alguard's protected disclosures were not contributing factors or that the actions were not "personnel action[s]" covered by the relevant statute, 5 U.S.C. § 2302(a)(2)(A). For example, the AJ agreed that the letter of caution was a personnel action but found that no protected disclosure contributed to it because neither Ms. Hoffman nor any other official involved in issuing the letter knew of any protected disclosure when it was issued. SApp'x 25. As to the change in Ms. Alguard's performance rating from "Superior" to "Fully Successful," the AJ agreed that alterations had been made to Ms. Alguard's performance appraisal form. But, because the rating was rectified before processing—with Ms. Alguard ultimately

---

[2]    The agency's brief observes—and Ms. Alguard's reply brief does not dispute—that Ms. Alguard's opening brief in this appeal did not challenge the Board's rejection of her whistleblower-retaliation claim regarding this personnel action. *See* Resp't's Informal Br. 17 n.2. We agree that Ms. Alguard has not preserved a challenge to that rejection and therefore do not further address this personnel action.

receiving a "Superior" rating—the AJ concluded that this incident was not a personnel action. SApp'x 28–29. The AJ likewise concluded that the alleged $500 spot-award denial was not a personnel action because there was "insufficient proof" that her supervisor "ever actually completed the process to recommend" Ms. Alguard for the award. SApp'x 29–30.

The AJ did find, however, that the five-day suspension and reprimand were personnel actions and that Ms. Alguard showed that at least one of her protected disclosures was a contributing factor. So the AJ considered whether the agency proved by clear and convincing evidence that it would have taken the same personnel actions absent such disclosure(s). In doing so, the AJ evaluated the factors articulated in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), namely: (1) the strength of the agency's evidence supporting its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. SApp'x 34–35 (citing *Carr*, 185 F.3d at 1323).

For each of these two personnel actions, the AJ found that: (1) the first *Carr* factor weighed in the agency's favor because strong evidence supported the agency's action, SApp'x 36–40; (2) the second *Carr* factor weighed in the agency's favor because there was "minimal evidence of retaliatory animus" from the relevant officials, SApp'x 40–43; and (3) the third *Carr* factor was neutral because "neither party introduced any specific evidence of an employee in a position similar to [Ms. Alguard's] who engaged in conduct similar to that for which she was disciplined," SApp'x 43. "Considering the factors as a whole," the AJ found that "the agency proved by clear and convincing evidence that it would have made the same decision as to both the suspension and the reprimand in the absence of [Ms. Alguard's]

whistleblowing." SApp'x 43–44. The AJ accordingly denied corrective action.

The AJ's initial decision became the Board's final decision. *See* 5 C.F.R. § 1201.113. Ms. Alguard timely petitioned for review of that decision. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

Our review of Board decisions is limited. *Whiteman v. Dep't of Transp.*, 688 F.3d 1336, 1340 (Fed. Cir. 2012). We will affirm a final decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Potter v. Dep't of Veterans Affs.*, 949 F.3d 1376, 1379 (Fed. Cir. 2020). We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Bannister v. Dep't of Veterans Affs.*, 26 F.4th 1340, 1342 (Fed. Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable individual might accept as adequate to support a conclusion." *Belanger v. Off. of Pers. Mgmt.*, 1 F.3d 1223, 1227 (Fed. Cir. 1993).

To establish a prima facie case of whistleblower retaliation before the Board, Ms. Alguard had to prove that, more likely than not, she made a protected disclosure that contributed to the agency's personnel action against her. *See* 5 U.S.C. § 1221(e)(1); *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1364 (Fed. Cir. 2022). She could prove such contribution by satisfying the so-called knowledge-timing test—i.e., by demonstrating that the official taking the action knew of the disclosure and that the action "occurred within a period of time such that a reasonable person could conclude" that the disclosure was a "contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1). If Ms. Alguard established her prima facie case, the burden would shift to the agency to prove, by clear and convincing evidence, that

it would have taken the same personnel action absent such disclosure.  *See* 5 U.S.C. § 1221(e)(2); *Rickel*, 31 F.4th at 1364.

Ms. Alguard, as the party alleging that the Board erred, has the burden of establishing as much.  *E.g.*, *Sacco v. Dep't of Just.*, 317 F.3d 1384, 1386 (Fed. Cir. 2003) (citing *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)).  We conclude that she has failed to establish any prejudicial error in the Board's decision.

We begin with the letter of caution.  Ms. Alguard disputes the Board's finding that her protected disclosures did not contribute to this personnel action, given that the agency had her OIG complaint before the letter of caution issued.  But the relevant question is not when the agency or its OIG had the complaint; it's whether the *official(s)* involved in issuing the letter of caution *knew* of the complaint when the letter was issued.  On this question, the Board noted that Ms. Alguard "offered no evidence" to show that Ms. Hoffman or any other relevant official "was aware" of Ms. Alguard's OIG complaint as of the letter's issuance, and it therefore found that Ms. Alguard failed to carry her burden on this issue.  SApp'x 25.  Ms. Alguard has identified nothing in the record that would make us think that no reasonable factfinder could have found as the Board did.

As to the change in performance rating from "Superior" to "Fully Successful," Ms. Alguard devotes substantial time to addressing who might have done what concerning the alterations made to her performance appraisal form.  *See* Pet'r's Informal Br. 4–7.  But the Board found those questions immaterial because Ms. Alguard ultimately received a "Superior" rating, rendering the incident, in the Board's view, not a covered personnel action.  *See* SApp'x 28 ("[R]egardless of who made the changes and why, [Ms. Alguard] did not prove that she was ever subjected to a negative performance evaluation . . . . I find this incident was not a performance evaluation . . . because the official

evaluation processed was 'Superior.'"). Ms. Alguard has not demonstrated that the Board's finding—i.e., that Ms. Alguard didn't carry her burden to show that this incident was a personnel action—lacked substantial evidence or was otherwise erroneous.

Ms. Alguard also appears to challenge the Board's finding regarding the alleged denial of a $500 spot award—specifically, its finding that this was not a personnel action because Ms. Alguard offered insufficient proof that her supervisor ever completed the process to recommend her for the award. Ms. Alguard's challenge rests on her view that a certain witness was not credible. *See* Pet'r's Informal Br. 6. Setting aside that the Board's finding rested on more than just that witness's testimony, "[t]he credibility determinations of an [AJ] are virtually unreviewable on appeal." *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). Again, we conclude that Ms. Alguard has not demonstrated that the Board's finding lacked substantial evidence or was otherwise erroneous.

Finally, regarding the five-day suspension and reprimand, Ms. Alguard impresses upon us her view of the incidents cited in those actions—presumably trying to undermine the Board's finding under the first *Carr* factor that strong evidence supported the agency's action.

The alleged incidents underlying the five-day suspension included (but were not limited to): (1) a phone call in which Ms. Alguard raised her voice, used profanity, and threatened a high-level agency official; and (2) Ms. Alguard's failure to follow instructions concerning procuring a shredding service and a new keyboard. SApp'x 36–38; *see also* SApp'x 553–55; SApp'x 561–65. As to the former, the Board considered a sworn statement from the high-level agency official and found that it was "consistent with other information in the record" (including testimony from someone who heard about the call shortly after it occurred) and "more credible than [Ms. Alguard's] general denial and self-

serving accusations about [the official's] integrity." SApp'x 37. As to the latter, the Board acknowledged Ms. Alguard's contention that the items she was told to purchase were "wasteful and unnecessary" and that it was "part of her job duties to question inappropriate purchases." SApp'x 38. But, after reviewing emails underlying this incident, the Board found that the purchase requests were "objectively innocuous" and that the emails "reflect[ed] [Ms. Alguard's] hostility toward" those making the requests and her "entrenched resistance" to the instructions. SApp'x 38. And, citing the deciding official's testimony, the Board agreed that while Ms. Alguard "eventually complied with the requests, she only did so after creating multiple delays, involving unnecessary parties, and otherwise inject[ing] difficulty into what should have been simple purchases." SApp'x 38.

The alleged incident underlying the reprimand concerned a conference call in which Ms. Alguard, despite being instructed to take her concerns with another employee offline, failed to follow that instruction and instead continued the discussion. SApp'x 17, 38–40; *see also* SApp'x 176–79; SApp'x 1119–23. The Board found that Ms. Alguard admitted to the conduct underlying the reprimand. SApp'x 40. Although Ms. Alguard now suggests that she did not admit to this conduct, her written and oral responses concerning the reprimand undercut that suggestion. *See* App'x[3] 75–77 (written response from Ms. Alguard acknowledging that she continued the discussion but attempting to justify why she did so); SApp'x 1990 (oral response reciting this justification); SApp'x 176–77 (reprimand decision addressing this justification). And, although Ms. Alguard had maintained that "she felt it was in the agency's best interests to discuss her complaints

---

[3]    "App'x" refers to Ms. Alguard's Appendix.

about [the employee] in a group setting," the Board found no merit to that contention.  SApp'x 39–40.

Ms. Alguard's arguments on appeal generally seek to justify her actions or attack the credibility of other witnesses.  None of these arguments convince us that the Board's finding under the first *Carr* factor lacked substantial evidence or was otherwise erroneous.

Ms. Alguard's arguments concerning the second *Carr* factor are similarly unconvincing.  For example, the Board found that: (1) animus between Ms. Alguard and Ms. Hoffman preexisted what could have been the consequence of Ms. Alguard's protected disclosures[4]; (2) nothing Ms. Alguard reported to OIG "seems to have reflected poorly on [relevant officials'] capacity as managers"; (3) aside from being required to respond to questions from OIG or other investigators, these officials "were not negatively impacted by" Ms. Alguard's protected disclosures; and (4) other deciding officials either did not know of Ms. Alguard's protected disclosures or knew of them only because Ms. Alguard brought them up in the course of the decisionmaking process.  SApp'x 41–43.  Ms. Alguard has not demonstrated that these findings—or the Board's decision to weigh the second *Carr* factor for the agency—lacked substantial evidence or were otherwise erroneous.  And while Ms. Alguard appears to take issue with the Board's finding that the third *Carr* factor was neutral, *see* Pet'r's Informal Br. 27, she has not demonstrated that the Board's finding—that "neither party introduced any specific evidence of an employee in a position similar to [Ms. Alguard's] who engaged in conduct similar to that for which she was

---

4    Although Ms. Alguard's reply brief challenges the Board's statements regarding the relative timing of events underlying this finding, Pet'r's Informal Reply Br. 15, we conclude that she forfeited this challenge by not raising it in her opening brief.

disciplined," SApp'x 43—lacked substantial evidence or was otherwise erroneous.

## III

We have considered Ms. Alguard's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

**AFFIRMED**

Costs

No costs.