# United States Court of Appeals for the Federal Circuit

---

**ANNE WHITEMAN,**
*Petitioner,*

v.

**DEPARTMENT OF TRANSPORTATION,**
*Respondent.*

---

2011-3165

---

Petition for review of the Merit Systems Protection Board in case no. DA1221090106-W-2.

---

Decided: August 10, 2012

---

MATTHEW D. ESTES, Tully Rinckey, PLLC, of Washington, DC, argued for petitioner. On the brief was STEVEN L. HERRICK.

STACEY K. GRIGSBY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were ALEXANDRA R. RANDAZZO and BRETT DAEE, Office of the

Chief Counsel, Federal Aviation Administration, of Washington, DC.

---

Before DYK, O'MALLEY, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Anne Whiteman appeals the decision of the Merit Systems Protection Board ("MSPB") dismissing her whistleblower retaliation action. The MSPB concluded that Whiteman was collaterally estopped from bringing her post-settlement retaliation claim by an earlier district court action she had filed and that she had waived her remaining claims by means of a settlement agreement.

Because the MSPB incorrectly concluded that Whiteman's post-settlement retaliation claim was collaterally estopped, we reverse the dismissal as to that claim only. We affirm as to the remaining claims because the MSPB's conclusion that the settlement agreement is enforceable is supported by substantial evidence and correctly applies the well-established law in this area.

## I. BACKGROUND

### A.

Whiteman was employed by the Federal Aviation Administration ("FAA") as an Air Traffic Control Specialist. Beginning as early as 1997, she reported to the Office of Special Counsel ("OSC") various violations of laws, rules, or regulations, as well as mismanagement and abuses of authority by the FAA. Whiteman alleged that in retaliation for these disclosures, her colleagues and supervisors began to threaten, harass, and intimidate her. In response, Whiteman filed two separate Equal Employment Opportunity ("EEO") actions. She claimed that

her supervisors and colleagues continued the harassment, which on one occasion she reported to the local police.[1]

According to Whiteman, events came to a head when a fellow controller intentionally directed a plane into the airspace of an aircraft that Whiteman was directing. Although a collision was avoided, the harassment continued and ultimately resulted in Whiteman being excluded from the radar room and stripped of all her duties. She claims that she was placed in a room and under watch by her supervisor and given "no real job assignment" during this seclusion. A63.[2] When she asked how long her seclusion would last, she was given no response. She was not allowed to leave the office except to use the bathroom. Shortly thereafter, she was reassigned to the control tower instead of her previous job in the radar room. Whiteman "perceived this as a major step backward in [her] career" given that she had been certified to work in the radar room for over fifteen years and had worked in the control tower prior to that. A64.

On February 5, 2003, Whiteman entered into a settlement agreement with the FAA resolving all claims against the FAA, including "complaints, actions, disputes, controversies, or issues, pending or otherwise, known or unknown . . . as of the date of the Settlement Agreement." A35. In exchange, she received a guaranteed one-time priority consideration for the next available funded operations supervisor position at the Dallas Fort Worth Tower. The agreement defined "priority consideration" as "bona fide consideration given to an employee by the selecting

---

[1]    Although important to Whiteman's case, the long details of her alleged harassment are not set forth in detail in this opinion, but are well addressed in the decision of the MSPB.

[2]    Citations to "A__" herein refer to pages of the Join Appendix filed by the parties in this appeal.

official before any other candidates are referred for the position to be filled," and required that Whiteman "is not to be considered in competition with other candidates and is not to be compared with other candidates." A34. Whiteman and her attorney, as well as the air traffic division manager and an attorney for the FAA, signed the settlement agreement and acknowledged that she had voluntarily and freely entered into the agreement.

On October 8, 2003, the FAA posted a supervisory position vacancy without first notifying Whiteman of the vacancy. When the FAA realized that Whiteman was entitled to priority consideration for the position, it cancelled the vacancy announcement, notified Whiteman of the vacancy, and requested that she provide written notification if she intended to seek priority consideration. On December 9, 2003, Whiteman applied for the position. No other applicants were considered.

On December 18, 2003, the FAA adopted agency-wide air traffic pay scale changes, which reduced the salary of the supervisory position. The incumbent of the supervisory position to which Whiteman had applied retired on January 3, 2004. Whiteman's application was ultimately accepted and she started her new job in the supervisory position in April 2004.

## B.

On June 1, 2004, Whiteman sued the FAA in the Eastern District of Texas, alleging that the FAA's delay in notifying her of the vacancy in October 2003 constituted a breach of the settlement agreement. Whiteman argued that the delay in hiring caused a reduction of her earnings due to pay scale changes affecting positions assumed after December 18, 2003. The court found that the undisputed facts showed that the FAA had not breached the settlement agreement because Whiteman had been given

priority consideration. The court also found that, even if the FAA had breached the agreement, Whiteman had suffered no damages because she could not have assumed the supervisory position prior to the December 18, 2003, change in pay scale since the vacancy did not exist until the employee she replaced retired on January 3, 2004. Accordingly, the district court concluded that there was no remaining controversy and dismissed Whiteman's case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

On November 16, 2008, Whiteman filed an individual right of action ("IRA") appeal before the MSPB contending that the FAA had unlawfully retaliated against her for her whistleblowing activities during the period from 1998 and October 3, 2003. In particular, she argued that the FAA intentionally delayed considering and promoting her and that it had exerted improper duress and coercion to induce her to sign the settlement agreement. Whiteman contended that as a result, she was precluded from obtaining the additional pay from the approximately three-month period between January 4, 2004, when the position first became vacant, and April 2004, when she was hired. The Administrative Judge ("AJ") found that by the terms of the settlement agreement, Whiteman had waived her claims for retaliatory actions occurring prior to the date of the settlement. The AJ also determined that the settlement agreement was valid and enforceable. With respect to the alleged post-settlement delay in notifying Whiteman of the job opening, the AJ concluded that Whiteman was collaterally estopped from raising that issue by the district court proceeding she had previously brought for breach of the settlement agreement. Because Whiteman had identified no personnel action that was not waived, time-barred, or collaterally estopped, the AJ concluded that the Board lacked jurisdiction over her appeal.

Whiteman petitioned for review, and the MSPB affirmed and made final the dismissal by the AJ. The MSPB agreed with the AJ that Whiteman's execution of the settlement agreement was not the result of duress or coercion, but instead "a considered choice among undesirable options." A19. With respect to collateral estoppel, the MSPB found that "[i]n both this appeal and the [d]istrict [c]ourt action, [Whiteman] raised the issue of whether the agency breached the settlement agreement in October 2003, thereby resulting in her non-selection for a promotion." A22. It therefore concluded that the AJ had "properly found that this issue was already decided by the [d]istrict [c]ourt." A22.

Whiteman appeals the MSPB's decision that she was collaterally estopped from litigating her post-settlement promotion delay claims by the district court proceedings and that certain of her claims were waived by the settlement agreement. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

Our review of decisions of the MSPB is limited. We may only set aside agency actions, findings, or conclusions if we find them to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ." 5 U.S.C. § 7703(c) (2006). Whether the board possesses jurisdiction is a question of law that this court reviews de novo. *Stoyanov v. Dep't of the Navy*, 474 F.3d 1377, 1379 (Fed. Cir. 2007).

### A.

The MSPB erred in concluding that collateral estoppel applied on the facts of this case. Collateral estoppel exists

where: "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." *Morgan v. Dep't of Energy*, 424 F.3d 1271, 1274-75 (Fed. Cir. 2005).

Here, the first factor was not met. The district court addressed only whether Whiteman was entitled to a higher rate of pay due to the agency's delay in considering her for the position, concluding that the case was moot because she had already received the priority consideration promised under the agreement. Priority consideration meant only that she was to be considered before any other applicant. The court determined that this requirement had been met because Whiteman was the only applicant to be considered and because she was in fact hired. Here, in contrast, the issue is not whether the FAA delayed in October 2003 in *considering* Whiteman, causing her to miss the opportunity for a higher salary, but whether after considering her the FAA delayed from January to April in 2004 in *appointing* her to the position, causing the loss of three month's pay. This is an entirely different delay which was not at issue in the district court proceeding. Thus, the issue was not identical and was not previously litigated, and collateral estoppel does not deprive the MSPB of jurisdiction to reach the merits of Whiteman's retaliation claim.

## B.

Whiteman also contends that because the settlement agreement was the result of duress and coercion, the MSPB's ruling that her pre-settlement claims were barred should be reversed. In attacking the settlement agreement, Whiteman bears a "heavy burden of proof that the

agreement was improperly obtained." *Tiburzi v. Dep't of Justice*, 269 F.3d 1346, 1355 (Fed. Cir. 2001) (internal quotation marks omitted).

We have repeatedly held that the choice between two unattractive options does not render a decision to retire involuntary. *E.g.*, *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996); *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). In this case, the AJ found that

> [Whiteman's] decision to enter into the settlement agreement, far from representing the involuntary acceptance of terms imposed by the agency, resulted instead from a considered choice among the following undesirable options: remaining in the Terminal Radar Approach Control (TRACON) facility, with restricted freedom, supervisory "monitoring," and "no work"; accepting a transfer to a position in Waco, Texas, "a significantly smaller, less prestigious facility"; or entering into the settlement, pursuant to which, in addition to receiving restoration of various leave, removal of performance charges from her records, priority consideration for promotion to a supervisory position in the Dallas Fort Worth Tower, and payment of attorney fees, she received a reassignment from a controller position in TRACON to a controller position in the Tower, "a step backward in her career progression and conveniently preventing her from observing any further operational errors."

In its final order, the MSPB concluded that the AJ had "properly [found] that [Whiteman's] execution of the

settlement agreement was a considered choice among undesirable options."

The MSPB's finding is supported by substantial evidence. Whiteman's declaration describes the Waco, Texas offer, which resulted from a mediation of her EEO complaint. The declaration also describes her option to continue working at TRACON, but in the control tower, not the radar room. Whiteman instead chose to settle. She acknowledged that she was represented by counsel and was satisfied with that representation. The settlement agreement stated that it "was the result of mutual consideration," "was made freely and fairly and was not the result of duress or bad faith negotiations," that Whiteman was "fully aware of the meaning of [the settlement agreement]," and that she would "receive no consideration beyond that recited in [the] Agreement." In return for settling her claims, Whiteman was promised restoration of over 400 hours of leave, removal of performance charges from her records, priority consideration for promotion, and payment of attorney fees. Whiteman concedes that she received the promised priority consideration and, as a result, obtained a new position in the Dallas Fort Worth airport tower.[3] *See* Pet'r's Br. 8-9. We therefore conclude that substantial evidence supports the AJ's assessment of Whiteman's alternatives, and that the MSPB did not abuse its discretion in affirming on that basis.

---

[3]    Whiteman also acknowledged that she previously sought to enforce the settlement agreement in district court. This raises questions as to whether she is judicially estopped from contesting the agreement or has ratified the agreement; however, because we affirm the MSPB's decision that the agreement was enforceable, we need not address these issues.

### III. CONCLUSION

For the reasons set forth above, we reverse the judgment of the MSPB that it was without jurisdiction to hear Whiteman's retaliation claim. We affirm its judgment that any of Whiteman's claims existing prior to the settlement agreement have been waived.

**REVERSED-IN-PART AND AFFIRMED-IN-PART**

### COSTS

Costs awarded to the Petitioner.