NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SARAH MURRAY, PH.D.,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2021-1560

---

Petition for review of the Merit Systems Protection Board in No. DA-1221-18-0518-W-2.

---

Decided: August 31, 2021

---

SARAH MURRAY, APO, 09180 AE, Germany, pro se.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., FRANKLIN E. WHITE, JR.

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

Sarah J. Murray petitions for review of the Merit Systems Protection Board's ("Board") decision sustaining her termination of employment by the Department of the Army ("Army") for unprofessional conduct during a probationary trial period. *See Murray v. Dep't of the Army*, No. DA-1221-18-0518-W-2 (M.S.P.B. Oct. 5, 2020) (decision available at App. 7–59[1]).  We affirm.

BACKGROUND

On January 11, 2016, the Army hired Ms. Murray as a Supervisory Nurse, stationed at the U.S. Army Institute of Surgical Research, Burn Center & Clinical Division, Fort Sam Houston, Texas.  App. 8.  Ms. Murray's employment was subject to a three-year probationary period, ending January 10, 2019, to allow for "an adequate period of time to fully evaluate [her] ability to complete a research cycle and/or to fully evaluate [her] contribution and conduct." App. 8–9.  As a Supervisory Nurse, Ms. Murray was expected "to maintain working relationships and a healthy work environment," among other responsibilities.  App. 9.

On March 13, 2018 (within the probationary period), Ms. Murray's supervisor, Major Thomas G. Robinson, Assistant Deputy Commander of Nursing, issued a letter to Ms. Murray terminating her employment.  App. 60–61; *see* App. 10.  Major Robinson's letter informed Ms. Murray that "[o]n several occasions" she had "demonstrated inappropriate, discourteous, and/or unprofessional behavior towards supervisors and coworkers" and that her conduct "ha[d] caused disruption in the workplace."  App. 60.  The letter noted that Ms. Murray had been previously counseled regarding her behavior but that her "ability to handle stressful situations in a professional manner has not

---

[1]    "App." refers to the appendix filed with the Army's response brief.

improved." App. 60. The letter concluded that "the inade-
quacies" of Ms. Murray's conduct "demonstrate a breach of
minimally acceptable standards for a Supervisory Nurse"
and that Ms. Murray had not demonstrated "fitness for
continued employment" in that role. App. 60.

Ms. Murray subsequently filed a complaint with the
U.S. Office of Special Counsel ("OSC") alleging that the
Army terminated her employment in retaliation for pro-
tected whistleblowing disclosures. *See* App. 67. On July 3,
2018, OSC issued a closure letter informing Ms. Murray
that it had terminated its inquiry into her complaint of re-
taliation. *See* App. 67–68.

Ms. Murray then initiated an individual right of action
("IRA") appeal before the Board requesting corrective ac-
tion under the Whistleblower Protection Act of 1989 and
the Whistleblower Protection Enhancement Act of 2012.
*See* App. 7–8. Like her OSC complaint, Ms. Murray's IRA
appeal alleged that the Army terminated her employment
in reprisal for protected whistleblowing. *See* App. 10–11.
The administrative judge assigned to the case found that
Ms. Murray had "established a prima facie case of whistle-
blowing retaliation." App. 29 (emphasis omitted). But the
administrative judge further found that the Army had "met
its burden of producing clear and convincing evidence . . .
that it would have terminated [Ms. Murray's employment]
absent her protected disclosures and activity" and denied
Ms. Murray's request for corrective action on that basis.
App. 50. The administrative judge's initial decision be-
came the final decision of the Board. *See* App. 51, 55.

Ms. Murray now petitions for review of the Board's de-
cision. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited. *Whiteman v.
Dep't of Transp.*, 688 F.3d 1336, 1340 (Fed. Cir. 2012). A
final decision of the Board must be affirmed unless it is

"(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Potter v. Dep't of Veterans Affs.*, 949 F.3d 1376, 1379 (Fed. Cir. 2020). We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

If an agency employee establishes as a prima facie case that a protected disclosure contributed to her removal, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the removal action even in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(2); *see Kewley v. Dep't of Health & Hum. Servs.*, 153 F.3d 1357, 1363 (Fed. Cir. 1998). In assessing whether an agency has met its burden, the Board considers three factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *See Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). But "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore v. Dep't of Labor,* 680 F.3d 1353, 1374 (Fed. Cir. 2012). Rather, "[t]he factors are merely appropriate and pertinent considerations for determining whether the agency carries its burden of proving by clear and convincing evidence that the same action would have been taken absent the whistleblowing." *Id.* The "absence of any evidence" relating to one

factor "can effectively remove that factor from the analysis." *Id.*

Here, Ms. Murray challenges the evidence and the Board's reasoning with respect to the *Carr* factors.[2]  *See* Appellant's Br. 2–6.  But, as discussed below, we see no basis to disturb the Board's decision, which properly applied the *Carr* framework and addressed each factor in detail in view of the record before the Board.  *See* App. 29–50.

First, substantial evidence supports the Board's finding that factor one "strong[ly]" weighed in the Army's favor in that Ms. Murray "engaged in multiple hostile and unprofessional encounters with agency employees in public areas of the hospital."  App. 43.  In support, the Board relied on testimony from multiple witnesses, including Ms. Murray, Major Robinson, Major Laura Kraemer (who worked in the Army's Department of Education), and Michael (Mika) Barba (a clinical nurse specialist).  *See, e.g.*, App. 30–35, 37–38.  For example, Major Kraemer contemporaneously documented that Ms. Murray "verbally assault[ed] and attack[ed] [her]" with respect to a training session and testified that Ms. Murray's conduct concerning the training session was "completely unprofessional."  App. 32.  The Board found Major Kraemer's testimony to be "credible, unbiased, and consistent with her earlier written account of the confrontation."  App. 33.  The Board further found Ms. Murray's denial of this "unprofessional confrontation" with Major Kraemer "not credible."  App. 33.   As another example, the Board credited Ms. Barba's testimony concerning Ms. Murray's unprofessional behavior in the workplace.  App. 34.  And the Board could "discern no hostility by Kraemer or Barba which could have precipitated [Ms. Murray's] conduct."  App. 39.  Indeed, the Board found that "[w]ith respect to

---

[2]    We have also considered Ms. Murray's "Memorandum in Lieu of Oral Argument" (ECF No. 20).

[Ms. Murray's] unprofessional confrontations with her co-workers, none were with a person who was the subject of her protected disclosures or who [Ms. Murray] claimed treated her poorly because of her whistleblowing activity." App. 39.

Second, substantial evidence supports the Board's finding with respect to factor two of "only mild" or "only moderate" indications of retaliatory motive. *See* App. 45, 48. For example, the Board "considered [that] Robinson was relatively new to the organization and was generally unaware of [Ms. Murray's] [protected] disclosures and activity" and "found credible Robinson's testimony that he only considered [Ms. Murray's] misconduct occurring while he was her supervisor [in taking removal action]." App. 45–46. As another example, the Board credited Major Robinson's testimony that he had already decided on removal before learning of Ms. Murray's protected activity. App. 48. Indeed, it appears that the Board's finding of even "some" retaliatory motive was based *only* on Ms. Murray's "criticism of management" "in general." App. 46.

Third, the Board found that factor three was "not a significant factor in this [case]" because there was "no evidence to show that [similarly situated] employees engaged in similar misconduct and were not similarly terminated during their probationary periods." App. 50. On appeal, Ms. Murray argues that this factor instead should have favored her because Lieutenant Colonel Robin Smith (who was a supervisor in the Burn Center) displayed "far worse [conduct than Ms. Murray] for a longer period of time but . . . was not a whistleblower and was not removed." Appellant's Br. 4. But the Board relied on the undisputed fact that "Smith was an active-duty member of the military and [Ms. Murray] was a probationary civilian employee" to properly conclude that "[Ms. Murray] and Smith are not similarly situated." App. 50; *see Carr*, 185 F.3d at 1327 (certain employees not similarly situated where the

different employee groups "were supervised under separate chains of command").

The Board then "[w]eigh[ed] the three *Carr* factors" and concluded, primarily on the "strong basis" of factor one, that the Army had met its burden of producing clear and convincing evidence that it would have terminated Ms. Murray's employment even absent her protected disclosures and activity. App. 50. As discussed, substantial evidence supports the Board's analysis of each factor. And it was not improper for the Board to have based its conclusion in this case on the strength of factor one given its findings with respect to the other two factors. *See Whitmore*, 680 F.3d at 1374. Accordingly, we conclude that the Board's ultimate determination under the *Carr* factors is in accordance with the law and supported by substantial evidence.

## CONCLUSION

We have considered Ms. Murray's remaining arguments but find them unpersuasive. For the reasons above, we affirm the Board's decision.

## **AFFIRMED**

### COSTS

No costs.