NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**KATHY LYNN CARTER,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

_____

2022-1305

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-21-0485-I-1.

_____

Decided: June 14, 2022

_____

KATHY L. CARTER, Brandywine, MD, pro se.

ERIC JOHN SINGLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.

_____

Before MOORE, *Chief Judge*, DYK and CHEN, *Circuit Judges*.

PER CURIAM.

Petitioner Kathy Lynn Carter appeals a decision by the Merit Systems Protection Board affirming the Department of Defense's (Defense) decision removing her from federal service for unauthorized absences and failure to follow instructions by refusing to perform telework during the novel coronavirus pandemic. *Carter v. Dep't of Def.,* No. DC-0752-21-0485-I-1, 2021 WL 5080549 (M.S.P.B. Oct. 28, 2021) (*Board Decision*) (Appx. 5–31).[1] Ms. Carter requests reversal and reinstatement or adjustment of her retirement date.[2] Pet. Br. at 16. Because we conclude that the Board's decision is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or contrary to law, we *affirm*.

## BACKGROUND

Before her removal, Ms. Carter was an Acquisition and Financial Support Specialist with Defense's Office of Net Assessment (ONA). Appx. 5; Appx. 250. In March 2020 and in response to the novel coronavirus pandemic, Ms. Carter was authorized for "Weather and Safety Leave." Appx. 214–15. Keith Walters, chief of staff for ONA, subsequently informed her that she could not remain on leave throughout the pandemic and arranged for her to telework—i.e., provided a laptop, network-access, a detailed outline of her duties and responsibilities, and necessary

---

[1]    "Appx." citations herein refer to the appendix filed concurrently with Petitioner's brief. Additionally, because the reported version of the Board's decision is not paginated, citations are to the version of the Board decision included in the appendix—e.g., *Board Decision* at 1 can be found at Appx. 5.

[2]    Prior to her removal, Ms. Carter submitted a request to retire, which Defense granted, and she retired effective June 3, 2021. Appx. 250.

teleworking resources and training.  Appx. 78–93; Appx. 215.  Ms. Carter, however, did not respond to Mr. Walters nor otherwise attempt to telework.  Appx. 215.

On December 8, 2020, Mr. Walters notified her that she needed to complete required telework training no later than December 15, 2020, explained that she was required to begin teleworking on January 4, 2021, and stated that she was permitted to take some of her "197 hours of use/lose leave" but was not authorized to take administrative leave.  Appx. 94.  Ms. Carter responded to Mr. Walters the same day, stating:

> Please stop asking about telework.  Talk with Col Regan (prior chief of staff), my supervisor and you, I am no longer interest in telework agreement.  Do not schedule annual leave.  I am already on weather and safety leave.

Appx. 207.  The next day, Mr. Walters issued a written memorandum notifying her that, effective January 4, 2021, she would not be authorized for Weather and Safety Leave, and would be required to report for duty via telework on that date pursuant to Defense's continuity of operations plan.  Appx. 119.  The memorandum again instructed her to complete the required telework training and informed her that failure to follow the procedures outlined in the notice would result in disciplinary action up to and including removal.[3]  Appx. 119–20.

Ms. Carter did not complete the required training or begin telework in accordance with Mr. Walters's memorandum email instructions.  Appx. 204; Appx. 216.  Consequently, Mr. Walters informed her on January 12, 2021,

---

[3]    To the extent that Ms. Carter contends that she did not have prior notification of potential removal, *see* Pet. Br. at 10, the Walters memorandum provided such notice, *see* Appx. 119–20.

that she was absent without leave (AWOL), retroactive as of January 4, 2021, the date upon which she was to begin teleworking.[4]  Appx. 204.  Since Ms. Carter did not report for duty until February 4, 2021, her records reflected her AWOL status from January 4 through February 3, 2021.  *See* Appx. 225; *see also* Appx. 105.

On April 7, 2021, Defense issued a "Notice of Proposed Removal" based on:  (1) AWOL charges, with 21 supporting specifications corresponding to each day she did not report for telework duty, and (2) failure to follow instruction charges, with 23 supporting specifications corresponding to instructions to request approval for leave and to complete required telework training.  Appx. 214; Appx. 216–20.  Ms. Carter provided a written response on April 15, 2021, Appx. 103–05, and Defense issued a final decision on May 21, 2021,[5] ordering her removal effective June 4, 2021, Appx. 223.  Ms. Carter retired instead.  Appx. 250.

On June 21, 2021, Ms. Carter appealed her removal to the Board.  *Board Decision* at 1.  On October 28, 2021, an administrative judge issued an initial decision on her appeal, which became the Board's final decision when she did not petition for Board review within 35 days.  *See* 5 C.F.R. § 1201.113; *Board Decision* at 20.  The Board found that Defense proved all of the charged misconduct by a preponderance of the evidence.  *Id.* at 6–15.  The Board rejected Ms. Carter's argument that Defense had no authority to compel her to telework, noting that Defense's written policies provided the necessary authorization.  *Id.* at 16.  The Board also rejected Ms. Carter's assertion that she did not

---

[4]    To the extent that Ms. Carter contends that she was unaware that her AWOL status would be recorded, *see* Pet. Br. at 10, the record evidence indicates otherwise, *see* Appx. 204.

[5]    Defense subsequently amended its decision on May 24, 2021.  Appx. 243.

receive notice to telework until February 3, 2021, as "incredible." *Id.* at 11. The Board found that it was "highly improbable" that Ms. Carter did not receive any of Mr. Walters many communications about the telework requirement via memorandum, phone calls, and email "as she had no problem communicating with him using these methods prior to December 8, 2020." *Id.* at 11–12. Instead, the Board found it was "probable that [Ms. Carter] simply refused to engage in any further conversations or communications with [Mr. Walters] regarding telework." *Id.*

The Board then concluded that Defense established the requisite nexus between Ms. Carter's actions and efficiency of service. *Id.* at 17. The Board reasoned that her AWOL status, which "by its very nature, disrupts the efficiency of the service," and "failure to follow instructions affect[ed] the agency's ability to carry out its mission." *Id.* Lastly, the Board reviewed Defense's consideration of the *Douglas* factors,[6] and concluded that Defense did not abuse its discretion in removing her from federal service as the penalty for her conduct. *Id.* at 18–19. The Board, therefore, affirmed Ms. Carter's removal. *Id.*

This appeal followed. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

A

Our review of Board decisions is limited. *Whiteman v. Dep't of Transp.*, 688 F.3d 1336, 1340 (Fed. Cir. 2012). A final decision by the Board must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or

---

[6] "*Douglas* factors" refers to the twelve factors articulated in *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981), for an agency to consider when determining whether a penalty is appropriate.

otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Bannister v. Dep't of Veterans Affs.*, 26 F.4th 1340, 1342 (Fed. Cir. 2022). We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015).

An agency must establish three things when it takes an adverse action against an employee: (1) that, by a preponderance of the evidence, the charged conduct occurred; (2) that there is a nexus between the conduct and efficiency of the service; and (3) that the penalty imposed was reasonable. *Bryant v. Nat'l Sci. Found.*, 105 F.3d 1414, 1416 (Fed. Cir. 1997).

B

Ms. Carter contends that Defense lacked legal authority to remove her for being AWOL from telework duty or for failing to follow instructions to telework because, under the Telework Enhancement Act, 5 U.S.C. §§ 6501 *et seq.* (TEA), she was not eligible for and could not be compelled to telework. Pet. Br. at 9, 11–14. We disagree.

The TEA requires government agencies to establish telework policies, determine telework eligibility, notify agency employees of their eligibility, provide teleworking training to eligible employees, and treat teleworkers no differently than non-teleworkers. *See* 5 U.S.C. §§ 6502(a), 6503(a). Before eligible employees participate in telework, the agency must enter into a written telework agreement with the eligible employee that "outlines the specific work arrangement that is agreed to." *Id.* § 6502(b). Such teleworking policies and agreements notwithstanding, the TEA also requires agencies to "incorporate telework into the continuity of operations plan of that agency," *id.* § 6504(d)(1), "supersed[ing] any telework policy" "during

any period that an executive agency is operating under a continuity of operations plan," *id.* § 6504(d)(2).

The Board correctly noted that, under established Defense policy, Defense employees typically cannot be ordered to telework unless their duties are designated mission-critical. *Board Decision* at 9; *see also* Appx. 150, Dep't of Defense, Instruction 1035.01, *Telework Policy*, Enclosure 3 § 2(f) (Apr. 7, 2020) (*Telework Policy*) ("Although use of telework is encouraged, employees cannot be ordered to telework, unless the employee's duties are designated as mission-critical and the employee is required to report to an alternative worksite or the employee's telework agreement addresses this requirement."); U.S. Off. of Pers. Mgmt., 2021 Guide to Telework and Remote Work in the Federal Government, at 14 (Nov. 2021) ("[T]he Act does not obligate an employee to participate in an agency telework program. Accordingly, employee participation in a telework program is voluntary.").

Although Ms. Carter's duties were not designated mission-critical, the Board correctly found that, in light of the novel coronavirus pandemic, Defense had authority to require her to telework pursuant to its continuity of operation (COOP) policies. *Board Decision* at 10–11, 16. Defense's COOP policies "supersede the telework policy" and provide that employees not normally eligible for telework may nonetheless be required to telework during a pandemic:

> *Employees who are telework-ready* (i.e., approved and equipped for routine or situational telework) *who are not able to report* to their assigned office location *due to a government closure from* a natural or manmade emergency event (e.g., snow emergency, flood, hurricane, earthquake, wild fire, act of terrorism, *pandemic*) *will telework* each regularly scheduled work day during the emergency situation. Contingent upon supervisory approval,

> telework-ready employees may telework when gov-
> ernment offices are open with the option for un-
> scheduled telework when weather conditions make
> commuting hazardous, or similar circumstances
> compromise employee safety. During any period
> that a WHS-serviced Component is operating un-
> der the COOP plan, that plan will *supersede the tel-*
> *ework policy and the provisions of the telework*
> *agreement.*
>
> * * *
>
> *In the event of a pandemic health crisis*, employees
> with COOP responsibilities, Service members, and
> employees who do not have COOP responsibilities
> but are trained and equipped to telework may be
> asked to telework to prevent the spread of germs.
> These employees or Service members should tele-
> work on a regular basis to ensure their proficiency
> and telework's effectiveness in continuing opera-
> tions. *Employees or Service members in positions*
> *not typically eligible for telework should telework on*
> *a situational basis when feasible.*

Dep't of Defense, Dir. of Admin. & Mgmt., Admin. Instruc-
tion 117, *Telework Program*, Enclosure 3 §§ 8(f), (g)(3)
(Mar. 31, 2015) (emphasis added); *see also* Appx. 157–58,
*Telework Policy*, Enclosure 3 § 3(i)(1)–(2) ("During any pe-
riod that a Component is operating under the COOP plan,
that plan shall supersede the telework policy and the pro-
visions of the telework agreement. . . . In the event of a
pandemic health crisis, . . . . Employees or Service mem-
bers in positions not typically eligible for telework should
telework on a situational basis when feasible."). Ms. Carter
admits that the novel coronavirus pandemic affected De-
fense's operations, Pet. Br. at 27, and she does not chal-
lenge the validity of Defense's COOP policies regarding
emergency telework. Moreover, Defense's COOP policies
are consistent with § 6504(d)(1) and (2) of the TEA.

The Board further observed that, consistent with agency policy, Defense initiated a continuity of operations plan in response to the novel coronavirus pandemic and provided Ms. Carter with the necessary equipment (i.e., laptop) and opportunities for training to work from her home (i.e., an approved location for Ms. Carter to perform work) so that she could telework on a situational basis. *See Board Decision* at 8–10, 16; *see also* Appx. 78–93; Appx. 168–69. After many months passed in which Ms. Carter declined requests to consider teleworking, she was instructed to commence telework on January 4, 2021, Appx. 119, and there is no dispute that she refused to and did not do so until February 4, 2021, Appx. 105. In view of this evidence, the Board's finding that Defense demonstrated by preponderance of evidence that Ms. Carter was AWOL from January 4 through February 3, 2021, and failed to follow instructions to report for telework duty was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Regarding nexus, our review is limited by statute to whether the Board's affirmance meets the statutory criteria. 5 U.S.C. § 7703(c). We hold in this case that it does.

An employee's AWOL status, "by its very nature, disrupts the efficiency of the service," and is therefore a proper basis for removal. *See Davis v. Veterans Admin.*, 792 F.2d 1111, 1113 (Fed. Cir. 1986) (holding that "any sustained charge of AWOL is inherently connected to the efficiency of the service"); *see also Bryant*, 105 F.3d at 1417 (noting that, since *Davis*, "both this court and the Board have routinely held that the nexus between the charged offense and the efficiency of the service is automatic when the charged offense is AWOL"). Additionally, there is a direct relationship between service efficiency and an agency's rules and regulations regarding attendance and authorized absences because an employee's failure to follow such instructions inherently affects the agency's ability to carry out its mission. Accordingly, the Board did not err in concluding that

Defense established the requisite nexus between Ms. Carter's AWOL and failure to follow actions and the efficiency of the service. *Board Decision* at 17.

Lastly, we are satisfied that the removal penalty selected by Defense, as affirmed by the Board, was supported by substantial evidence and was not an abuse of discretion or violation of law. The record in this case establishes that both Defense and the Board properly considered the relevant aggravating factors based on Ms. Carter's failure to report for telework duty and mitigating factors based on her prior, satisfactory performance record. *Board Decision* at 18–19; Appx. 226 (Defense's consideration of *Douglas* factors). Moreover, Defense specifically "considered the consistency of the penalty with that imposed upon other employees for the same offense and the adequacy of alternative sanctions to deter future misconduct," noting that "[o]ther employees have been removed for AWOL and Failure or Delay in Carrying Out Written Regulations, Orders, Rules, Procedures, or Instructions." Appx. 226. In view of this evidence, we cannot say that the Ms. Carter's removal is so "outrageously disproportionate" to the offense as to constitute an abuse of discretion or violation of law. *See Yeschick v. Dep't of Transp.*, 801 F.2d 383, 384–85 (Fed. Cir. 1986).

C

Ms. Carter also argues that Defense failed to provide advance notice of disciplinary action pursuant to 5 U.S.C. § 7513(b)(1). Pet. Br. at 6–7, 9–10, 15–16. We disagree.

Pursuant to § 7513(b)(1), "[a]n employee against whom an action is proposed is entitled to" *inter alia* "at least 30 days' advance written notice." Since Ms. Carter received Defense's Notice of Proposed Removal on April 7, 2021, Defense did not issue its final decision until May 24, 2021, and her removal was not effective until June 4, 2021, she received the required 30 days' advance notice. Appx. 214;

Appx. 243. We therefore reject petitioner's procedural argument.

## CONCLUSION

We have considered Ms. Carter's remaining arguments and do not find them persuasive. For the foregoing reasons, the Board did not err in affirming Defense's removal action against Ms. Carter. Accordingly, we affirm the Board's decision.

## **AFFIRMED**

### COSTS

No costs.