NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**LEONARD COOPERMAN,**
*Petitioner*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent*

_____

2022-1915

_____

Petition for review of the Merit Systems Protection Board in No. CB-7521-16-0001-T-1.

_____

Decided: May 16, 2023

_____

LENNY COOPERMAN, Feeding Hills, MA, pro se.

JASON HAMILTON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

SOMMATTIE RAMRUP, Association of Administrative Law Judges/IFPTE, Purchase, NY, for amicus curiae Association of Administrative Law Judges/IFPTE.

_____

Before LOURIE, HUGHES, and STARK, *Circuit Judges*.

PER CURIAM.

Leonard Cooperman appeals a decision of the Merit Systems Protection Board finding good cause to remove Mr. Cooperman from his position as an administrative law judge at the Social Security Administration. Because the Board's decision is supported by substantial evidence and because the Board did not otherwise err in its analysis, we affirm.

I

A

Administrative law judges with the Social Security Administration (SSA) review claims for disability benefits. One type of disability benefit is for a closed period of disability (CPOD). To be eligible for CPOD benefits, a claimant must show that they were temporarily disabled, but later experienced a medical improvement that allowed them to work again. A claimant who receives CPOD benefits will receive a lump-sum disability payment without having to go through the full hearing process, but those claimants might forgo ongoing disability benefits for which they might have qualified. Agency regulations require that a finding of medical improvement be based upon more than a claimant's own assertion that their condition has improved. Instead, a finding of medical improvement "must be based on the changes in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

Along with the relevant statutes and regulations, administrative law judges also reference two agency manuals for guidance when issuing disability decisions. Administrative law judges must follow the policies laid out in the agency's Hearings Appeals and Litigation Law Manual (HALLEX), which is binding on all administrative law judges employed by the SSA. In relevant part, the

HALLEX requires administrative law judges to make a complete record of all hearing proceedings, which includes summarizing the content and conclusion of any off-the-record proceedings on the record. The HALLEX also requires administrative law judges to provide "an explanation of the finding(s) on each issue that leads to the ultimate conclusion, including citing and discussing supporting evidence." SAppx 13 (quoting HALLEX I-2-8-25).

Administrative law judges may also reference the Program Operations Manual System (POMS) for more guidance. But the POMS is not a primary source of policy, nor are its provisions binding on administrative law judges. In relevant part, the POMS states that an "improvement in symptoms alone, without associated changes in signs or laboratory findings, may, however, support finding [medical improvement]." POMS DI 28010.015(C)(2).

B

Mr. Cooperman was an administrative law judge appointed by the SSA in June 2005 and assigned to work in the Office of Disability Adjudication Review (ODAR) in Springfield, MA. During his employment, Mr. Cooperman issued CPOD decisions. Beginning in 2010, claimants began filing complaints that Mr. Cooperman was pressuring them to accept a CPOD determination in lieu of conducting a full disability hearing. Some of these claimants immediately re-applied for disability benefits after receiving a CPOD decision, increasing the workload for ODAR. After approximately 35 of Mr. Cooperman's decisions were found "questionable" for failing to state the evidentiary basis for the CPOD determination, Mr. Cooperman was offered re-training.

In January 2011, a U.S. Magistrate Judge in the District of Massachusetts remanded one of Mr. Cooperman's cases, noting that "contrary to the directives of the

regulations and the HALLEX manual, the record does not reflect what was discussed off the record prior to the hearing regarding a 'proposal' Plaintiff apparently felt pressured to 'accept' in lieu of a 'full hearing.'" SAppx 19 (quoting *Betancourt v. Astrue*, 824 F. Supp. 2d 211, 216–17 (D. Mass. 2011)). After the remand, Mr. Cooperman was once again offered re-training, including specific instructions for explaining the basis for a CPOD determination, as well as instructions for memorializing off-the-record discussions. But throughout 2011, Mr. Cooperman's CPOD decisions continued to draw complaints from claimants and increased scrutiny from the agency, resulting in Mr. Cooperman receiving a directive in December 2011 to comply with the requirements for issuing CPOD determinations and for memorializing off-the-record discussions. Even after receiving this directive, claimants continued to complain about Mr. Cooperman's decisions, causing the agency to conduct interviews with Mr. Cooperman in October 2012 and in March 2013. After both interviews, the agency concluded that Mr. Cooperman was continuing to have off-the-record conversations with claimants and their counsel without appropriately memorializing those conversations and was still failing to adequately support his CPOD determinations.

In September 2013, the agency conducted a focused review of Mr. Cooperman's decisions and found a pattern of deficiencies. This included "[CPOD] decisions that were not supported by the evidence of record; off-the-record discussions . . . that were not adequately summarized on the record; and unsecured email communications between [Mr. Cooperman] and claimants or claimants' representatives that contained [personally identifiable information] belonging to the claimants." SAppx 26. This led the agency to make a referral to the Office of the Inspector General (OIG) for an investigation into the "possibility of fraud, waste and abuse, or mismanagement by ALJ Cooperman or the representatives appearing before

him." SAppx 26. The OIG's report found no evidence of criminal wrongdoing but found that Mr. Cooperman's decisions "lacked sufficient reference to medical evidence to support" those decisions, and that Mr. Cooperman had sent "emails containing [personally identifiable information] that were not encrypted or password protected . . . ." SAppx 27. At this point, the agency began to seriously consider removing Mr. Cooperman from his position.

C

In October 2015, the agency filed a complaint with the Merit Systems Protection Board to remove Mr. Cooperman from his position for good cause based on two charges: neglect of duties and conduct unbecoming. The neglect of duty charge included specifications directed at Mr. Cooperman's failure to provide the evidentiary rationale behind his CPOD determinations, his failure to memorialize off-the-record conversations, and his mishandling of claimants' personally identifiable information. The conduct unbecoming charge included 16 specifications directed at Mr. Cooperman's email communications with various legal representatives that potentially gave rise to a perception of partiality. The initial decision sustained both charges but found that a 180-day suspension was the appropriate penalty, rather than removal. After both the agency and Mr. Cooperman appealed the initial decision to the full Board, the Board upheld the initial finding sustaining both charges and found good cause to remove Mr. Cooperman from his position. The Board found that the initial decision did not properly evaluate the *Douglas* factors[1] regarding the

---

[1]    The *Douglas* factors are the twelve factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313, 5 M.S.P.R. 280 (1981), for an agency to consider when determining whether a penalty is appropriate.

notoriety of Mr. Cooperman's offenses or the potential for rehabilitation, and that an appropriate evaluation rendered removal the appropriate outcome.

Mr. Cooperman now appeals.

## II

Our review of Board decisions is limited. *Whiteman v. Dep't of Transp.*, 688 F.3d 1336, 1340 (Fed. Cir. 2012). A final decision of the Board must be affirmed unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Potter v. Dep't of Veterans Affs.*, 949 F.3d 1376, 1379 (Fed. Cir. 2020).

## III

Mr. Cooperman raises three arguments on appeal. First, Mr. Cooperman argues that the Board's decision to remove him for the neglect of duties charge was arbitrary and capricious. Second, Mr. Cooperman argues that the Board denied him due process, specifically because "conduct unbecoming" is impermissibly vague and because the Board did not allow him to supplement the evidentiary record after the close of evidence. And third, Mr. Cooperman argues that the Board incorrectly held that removal was the appropriate remedy. We address each of these arguments in turn.

## A

Mr. Cooperman argues that the neglect of duties finding should be reversed for three reasons: first, because he was allowed to make CPOD decisions based solely on a claimant's assertion that their medical condition had improved; second, because the standard for "adequately" summarizing his off-the-record proceedings was vague; and third, because he eventually corrected how he handled

claimants' personally identifiable information. Pet. Br. 12–17, 25–29. None of these arguments is persuasive.

Mr. Cooperman relies on POMS DI 28010.015(C)(2)[2], which says that ["i]mprovement in symptoms alone, without associated changes in signs or laboratory findings, *may*, however, support finding [medical improvement]" (emphasis added), to argue that a claimant's assertions about her symptoms alone can constitute sufficient evidence to decide a CPOD claim. We do not agree, because doing so would require us to give more authority to an internal guidance document than the statutory or regulatory frameworks that bind administrative law judges. This sentence from the POMS—which is merely an internal manual with no binding authority—cannot supersede the statutory and regulatory framework that administrative law judges are required to follow. Courts have recognized that the POMS is merely a document to guide administrative law judges and does not replace or supersede any corresponding regulations. *See e.g., Wash. State Dep't of Soc. and Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003) (noting that POMS are just "the publicly available operating instructions for processing Social Security claims").

The parties dispute whether there is a direct conflict between the POMS, which, as we have noted, provides that ["i]mprovement in symptoms alone, without associated changes in signs or laboratory findings, *may*, however, support finding [medical improvement]," and the applicable regulations, which require that any decision finding medical improvement "*must* be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." 20 C.F.R.

---

[2] Mr. Cooperman actually cites to POMS DI 28010.015(A)(2), but the current version with this language is found at 28010.015(C)(2).

§ 404.1594(b)(1)  (emphasis  added);  20  C.F.R.
§ 416.994(b)(1)(i) (containing identical language). We need
not resolve this dispute. Whether or not there is a conflict,
the regulations are governing while the POMS is not.
Moreover, Mr. Cooperman was repeatedly instructed he
could not base CPOD decisions solely on a claimant's word,
and his failure to comply with that direction provides
substantial evidence for the Board's decision, regardless of
whether the POMS and the regulations conflict with one
another.

For his summary of off-the-record proceedings,
Mr. Cooperman claims that the standard for appropriate
summaries was impermissibly vague. But Mr. Cooperman
does not explain why the standard is vague, especially
given how much training he received about memorializing
off-the-record proceedings and the specific directive he was
given. Mr. Cooperman makes general arguments that his
summaries were adequate and that the agency only looked
at a small sample of his decisions, but he does not argue
why the Board's findings regarding his summaries were
unsupported by substantial evidence. Mr. Cooperman does
not deny that he received multiple trainings on how to
appropriately memorialize off-the-record conversations on
the record. Because Mr. Cooperman has not explained how
the Board's decision lacks substantial evidence or contains
any legal error, we see no basis to disturb the Board's
findings.

Finally, as for Mr. Cooperman's handling of claimants'
personally  identifiable  information,  Mr.  Cooperman
merely argues that he eventually corrected his conduct.
Pet. Br. 26. Mr. Cooperman relies on the Board's decision
in *Adamek v. U.S. Postal Serv.*, 11 M.S.P.B. 482 (1982),
where the Board held that the agency is barred from
combining two actions for which there was already an
adverse action taken, into a new charge to take a more
severe  adverse  action.  We  agree  with  the  Board's
conclusion that *Adamek* does not apply here because

Mr. Cooperman was not subject to an adverse action regarding his mishandling of personally identifiable information. Mr. Cooperman admitted that he failed to encrypt emails containing personally identifiable information and has not explained why the Board's finding on that admission was unsupported by substantial evidence.

As a result, we are unpersuaded by Mr. Cooperman's arguments regarding his neglect of duties charge, and we find that the Board's determination for that charge is supported by substantial evidence.

B

Next, Mr. Cooperman argues that he was denied due process for two reasons: first, because the charge of "conduct unbecoming" is impermissibly vague; and second, because the Board did not allow him to submit additional evidence after the record was closed. Pet. Br. 18–25. We disagree with Mr. Cooperman on both counts.

The specifications underlying Mr. Cooperman's conduct unbecoming charge fall into two categories in 5 C.F.R. § 2635.101(b): breach of duty of impartiality at (b)(8) and breach of duty to avoid creating the appearance of a violation of a law or ethical standard at (b)(14). Mr. Cooperman does not specifically challenge any of the specifications underlying this charge, nor does Mr. Cooperman deny the content of any of the emails that led to this charge. Instead, Mr. Cooperman invites us to create a new standard by which administrative law judges are "only subject to discipline for a violation of any Federal or State Law, or any written policy expressly and specifically defining what constitutes a violation." Pet. Br. 24. Mr. Cooperman does not provide any legal reasoning or support for this request, and we decline his invitation. Furthermore, Mr. Cooperman asks us to overturn two of

our cases[3] upholding the removal of administrative law judges for conduct unbecoming charges, but again does not provide any rationale for us doing so. Thus, Mr. Cooperman has not persuasively explained why his "conduct unbecoming" charge is impermissibly vague.

As for his efforts to supplement the closed record, Mr. Cooperman argues that the Board abused its discretion by refusing to supplement the closed record with more emails he gathered supporting his argument that administrative law judges could follow guidance in the POMS. Pet. Br. 19–20. But the Board need not accept any additional evidence or argument after the record closes unless it is new and material. 5 C.F.R. § 1201.114(k). Mr. Cooperman has not explained how any of the emails he sought to add to the record contained "new" or "material" information—in fact, the record already contained evidence that administrative law judges *could* consider guidance in the POMS, but could not use it to replace or supersede regulations. Thus, we are unpersuaded that the Board abused its discretion by declining to accept this additional evidence after the record closed.

Because both of Mr. Cooperman's arguments regarding his due process rights are unavailing, we hold that the Board did not violate any of Mr. Cooperman's due process rights while handling his removal case.

C

Finally, Mr. Cooperman argues that even if both charges could be sustained, removal was not the appropriate remedy. Pet. Br. 28. Beyond reiterating arguments that we have already rejected in previous

---

[3]    Mr. Cooperman asks us to overturn *Long v. Social Security Administration*, 635 F.3d 526 (Fed. Cir. 2011) and *Abruzzo v. Social Security Administration*, 489 Fed. App'x 449 (Fed. Cir. 2012) (non-precedential).

sections, Mr. Cooperman does not identify any errors with the Board's decision to remove him, nor does he challenge the Board's analysis of the *Douglas* factors. Here, we see no reason to disturb the Board's determination that removal was an appropriate remedy considering the severity of Mr. Cooperman's conduct. The Board sustained both charges underlying the agency's request to remove Mr. Cooperman from his position, and nothing in the record requires a re-evaluation of the *Douglas* factors or the Board's conclusion to remove Mr. Cooperman from his position. Thus, we hold that the Board's decision removing Mr. Cooperman from his position was supported by substantial evidence.

## IV

We have considered Mr. Cooperman's remaining arguments and find them unpersuasive. Accordingly, we affirm the Board's decision granting the agency's request to remove Mr. Cooperman from his position as an administrative law judge.

**AFFIRMED**